UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROL BAILEY-MEDWELL,<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C17-1697-MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on the parties' Cross-Motions for Summary Judgment (Dkt. Nos. 18, 28) and Defendant's Motion to Strike (Dkt. No. 28). Having reviewed the Motions, the Responses, the Replies, and the related record, the Court GRANTS Defendant's Motion for Summary Judgment, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion to Strike. The Court declines to hear oral argument on the matter.

**Background**

Plaintiff Carol Bailey-Medwell brings this action against Defendant Hartford Life and Accident Insurance Company ("Hartford") for (1) breach of contract; (2) violation of the

Insurance Fair Conduct Act, RCW 48.30.015 et seq. ("IFCA"); and (3) violation of the Consumer Protection Act, RCW 19.86 et seq. ("CPA") for its failure to pay her a death benefit she claims she is owed. (See Dkt. No. 1, Ex. 1.)

Ms. Bailey-Medwell is the holder and the sole beneficiary of a Hartford Flexible Premium Adjustable Life Policy, Policy No. U01522334 (the "Policy"). (Dkt. No. 21 at ¶ 2; Dkt. No. 24, Ex. A.) The Policy named Ms. Bailey-Medwell's father, Ralph Eads, Jr., as the insured, and provided for payment of "Death Proceeds" in the event that he died while it was in effect. (Dkt. No. 24, Ex. A at MED-HART000003.) The Policy was issued on April 16, 1992 and matured on April 16, 2017. (Id.)

A "Flexible Premiums" provision in the Policy allowed Ms. Bailey-Medwell to choose the amount and frequency of premium payments. (Id. at MED-HART000009.) At the time in question, Ms. Bailey-Medwell had elected to pay an annual premium of $39,190.56 per year, or $9,797.64 per quarter. (Dkt. No. 24, Ex. B.) Hartford sent Ms. Bailey-Medwell quarterly notices reminding her of her planned premiums on the schedule she selected. (Dkt. No. 24, Ex. D.) However, so long as she maintained a minimum value in the policy, she was not obligated to pay the planned premiums. (Dkt. No. 24, Ex. A at MED-HART000009.)

The Policy's "Maturity Date" was described as follows:

> **Maturity Date**
>
> No insurance coverage will be effective after the Maturity Date. It is the last date to which you may elect to pay premiums. Any Policy Value at the Maturity Date will be paid to you. It is possible that coverage may not continue to the Maturity Date, if premiums paid and interest credited are not sufficient to provide coverage to that date.

(Id. at MED-HART000014.) On February 23, 2017, Hartford sent Ms. Bailey-Medwell a notice (the "Maturity Notice") reminding her that the Policy would mature on April 16, 2017.

(Dkt. No. 24, Ex. G.) The Maturity Notice explained that "[w]hen your policy matures, the policy will be terminated, we will pay you the maturity value and a death benefit will no longer be available." (Id.)

On March 21, 2017, Ms. Bailey-Medwell's insurance agent, Phyllis Harrington, contacted Hartford by phone to ask if coverage could be extended beyond the Maturity Date. (Dkt. No. 21 at ¶ 5; Dkt. No. 22 at ¶ 2; Dkt. No. 24, Ex. H.) Hartford concedes that it erroneously told her that she could apply for an extension. (Dkt. No. 28 at 10.) That same day, Ms. Harrington was told that the Policy could not be extended. (See Dkt. No. 24, Ex. H (Ms. Harrington reporting to Ms. Bailey-Medwell "[t]his morning I have made three phone calls to The Hartford in regards to your father's life policy . . . I was advised that this policy is set to mature this year April 18, 2017 and that there is not any possibility for the policy to last past maturity. . . . I then called back into the broker line to confirm this information I received is accurate and the representative did advise that this is correct and that the policy will mature this year and cannot be extended.").) Also on that same day, Ms. Bailey-Medwell called Hartford and was told that the Policy would mature on April 16, 2017 and could not be extended. (Dkt. No. 24, Ex. F at 95:17-96:23.) Ms. Bailey-Medwell asked "if there's something to do about that," and was told "there's nothing we can do . . . [w]e cannot extend the policy." (Id. at 96:16-23.) Thereafter, Ms. Bailey-Medwell sent a letter to Hartford requesting that the Policy be extended through April 16, 2021. (Dkt. No. 24, Ex. I.) On March 23, 2017, Hartford responded in writing, stating "[p]lease be advised the policy matures on April 16, 2017. Coverage cannot be continued past this date." (Dkt. No. 24, Ex. J.)

On March 24, 2017, Ms. Bailey-Medwell received a premium payment reminder (the "Payment Notice") from Hartford, informing her that her quarterly premium of $9,797.64 was

due on or before April 16, 2017. (Dkt. No. 21 at ¶ 6; Dkt. No. 24, Ex. L.) Ms. Bailey-Medwell mailed a check to Hartford in the amount of $9,797.64 on April 9, 2017 and made an electronic payment in the amount of $9,797.64 on April 13, 2017 (the "April 2017 Payments"). (Dkt. No. 21 at ¶¶ 6-7.) Both cleared her account on April 17, 2017. (Id.) On April 18, 2017, Hartford sent Ms. Bailey-Medwell a letter acknowledging the payments and stating "[o]ur records indicate that your policy has matured as of April 16; therefore [it] cannot be reinstated. A refund check in the amount of $9,797.64 will be sent under separate cover." (Dkt. No. 24, Ex. M.) While Ms. Bailey-Medwell denies receiving this letter, she acknowledges that both of the April 2017 Payments were refunded. (Dkt. No. 21 at ¶¶ 9-10.)

On April 24, 2017, Mr. Eads died at age 95. (Dkt. No. 24, Ex. O.) Hartford sent Ms. Bailey-Medwell a letter acknowledging his death and informing her that no death benefit was payable under the Policy because he had died after it matured. (Id.) Hartford sent Ms. Bailey-Medwell a second check for the Maturity Value of the Policy. (Dkt. No. 24, Ex. P.)

In September 2017, counsel for Ms. Bailey-Medwell sent a letter to Hartford and the Washington State Insurance Commissioner claiming that the April 2017 Payment Notice constituted an offer to extend the Policy, which was accepted upon Ms. Bailey-Medwell's submission of the April 2017 Payments. (Dkt. No. 19, Ex. A.) Counsel claimed that a representative for Hartford had, over the phone, "confirmed that if she paid the premium due the policy was in full force and effect." (Id.; see also Dkt. No. 1, Ex. 1 at ¶ 1.12.) However, a recording of the call reveals that Ms. Bailey-Medwell never asked, and was never told, that the Policy would continue beyond April 16, 2017 if she paid the additional premium. (Dkt. No. 24, Ex. E.)

**Discussion**

**I.  Motion to Strike**

Hartford moves to strike the Declaration of Leona M. Phelan ("Phelan Declaration") and the exhibits attached thereto.  (Dkt. No. 20.)  Hartford also objects to certain portions of the Declaration of Carol Bailey-Medwell ("Bailey-Medwell Declaration").  (Dkt. No. 21.)  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  <u>Orr v. Bank of Am., NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002).

The Court finds that the Phelan Declaration is inadmissible as it is not based upon personal knowledge and is not the best evidence of the contents of either the records or the recording it purports to summarize.  The exhibits attached thereto are also inadmissible for the same reasons.

The Court finds that the objected-to portions of the Bailey-Medwell Declaration (<u>i.e.</u>, Dkt. No. 21, ¶¶ 7 (her assertion that her payments "were accepted" by Hartford); 9 (her assertion that the April 18 letter returning her payment "was 'made up' by someone at Hartford . . . to try and cover-up what they are now apparently calling a 'mistake' in sending me the premium notice due"); and 10 (her assertion that "Hartford attempted to negate their obligation to pay the death benefit by refunding to me, via Hartford checks, both payments that they had accepted from me of $9,797.00 on April 17, 2017") are not based upon personal knowledge and are therefore improper.

The Court therefore GRANTS the Motion to Strike and does not rely upon the stricken statements in its consideration of the Cross-Motions for Summary Judgment.

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

### B. Breach of Contract

Ms. Bailey-Medwell contends that Hartford breached the insurance contract when it failed to pay the proceeds upon Mr. Eads' death. (Dkt. No. 1, Ex. 1 at ¶¶ 2.0-2.2; Dkt. No. 18 at 4-5.) To prevail on her breach of contract claim, Ms. Bailey-Medwell must show (1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages. Storti v. Univ. of Wash., 181 Wn. 2d 28, 35 (2014).

The Court finds that Ms. Bailey-Medwell has not shown the existence of a valid contract. The Policy clearly provides a Maturity Date of April 16, 2017. The Policy provides that "[n]o insurance coverage will be effective" after this date, and that it is "the last day [the policy owner] may elect to pay premiums." (Dkt. No. 24, Ex. A at MED-HART000014.) Further, the Policy provides that it can be modified only "by written agreement signed by [Hartford's] President, or one of our Vice Presidents, Secretaries or Assistant Secretaries." (Id. at MED-HART000011.)

Despite this unambiguous language, Ms. Bailey-Medwell claims that a contract was formed when Hartford accepted the April 2017 Payments. In particular, Ms. Bailey-Medwell claims that the Payment Notice was an "offer" to extend coverage, and that the April 2017 Payments constituted "acceptance." This claim is unavailing for several reasons:

First, Ms. Bailey-Medwell's contention that the Payment Notice constituted an "offer" to extend coverage is clearly foreclosed by the Policy's terms.

Second, the Payment Notice does not contain any language indicating that Hartford would extend coverage beyond the Maturity Date if Ms. Bailey-Medwell paid an additional premium.

Third, it is undisputed that Ms. Bailey-Medwell and her insurance agent were repeatedly advised by Hartford representatives that the Maturity Date could not be extended. Even if a Hartford representative provided misinformation at one point, each of the subsequent calls was recorded and each was clear—the Policy could under no circumstances be extended.

Finally, the cases Ms. Bailey-Medwell relies upon—Tebb v. Continental Cas. Co., 71 Wn.2d 710 (1967) and Bushnell v. Medico Ins. Co., 159 Wn. App. 874 (2011)—are inapposite. In both, courts found that new insurance contracts were formed by the acceptance of renewal premiums *where the policies provided for renewal in such a manner*. In Tebb, the policy provided that "it may be renewed with the consent of the Company . . . by the payment in advance of renewal premium. Each such renewal shall continue this policy in force until the first day of the calendar month next succeeding that for which premium has been paid. *The Company's acceptance of premium shall constitute its consent to renewal*." Tebb, 71 Wn.2d at 711 (emphasis added). In Bushnell, the policy provided that "[a]s long as you pay the renewal premium then in effect on the date it is due . . . we cannot refuse to renew your policy unless we

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

do the same to all policies of this form issued to persons of your class (for example, age) in your state." Bushnell, 159 Wn. App. at 887. There is no such clause in Ms. Bailey-Medwell's Policy. To the contrary, it explicitly states that the Policy can be modified only "by written agreement signed by [Hartford's] President, or one of our Vice Presidents, Secretaries or Assistant Secretaries." (Dkt. No. 24, Ex. A at MED-HART000011.)

Therefore, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment as to the breach of contract claim.

### C. IFCA and CPA

Ms. Bailey-Medwell contends that Hartford violated the IFCA and CPA by unreasonably denying payment of benefits. (Dkt. No. 1, Ex. 1 at ¶¶ 3.0-3.5, 4.0-4.3.) Both of these claims turn on the reasonableness of Hartford's conduct, including the reasonableness of its interpretation of the Policy. See, e.g., Perez-Crisantos v. State Farm Fire and Cas. Co., 187 Wn.2d 669, 680 (2017) (IFCA "creates a cause of action for first party insureds who were 'unreasonably denied a claim for coverage or payment of benefits"); Transcontinental Ins. Co. v. Wash. Pub. Utils. Dists. Utils. Sys., 111 Wn. 2d 452, 470 (1988) ("A denial of coverage based on a reasonable interpretation of the policy is not bad faith, and even if incorrect, does not violate the [CPA] if the insurer's conduct was reasonable.") (citations omitted). Whether an insurer's conduct is reasonable must be determined "in light of all the facts and circumstances of the case." Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wn.2d 907, 920 (1990).

The Court finds that, because the Policy had, by its terms, terminated before the date of Mr. Eads' death, and because Ms. Bailey-Medwell's payment of the April 2017 premium did not create a contract, Hartford's denial of the claim was entirely reasonable. The Court also finds

that there is no evidence that Hartford acted in bad faith at any time during its handling of the claim.

Therefore, the Court DENIES Plaintiff's Motion for Summary Judgment as to bad faith and GRANTS Defendants' Motion for Summary Judgment as to the breach of contract claim.

**Conclusion**

Having found that Ms. Bailey-Medwell's payment of the April 2017 Payments did not create a contract or extend the Maturity Date on the Policy, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 23, 2018.

Marsha J. Pechman
United States District Judge